Good morning. My name is Mario Valencia. I represent the defendant in this case, Mr. Tirado. If it's okay, I'd like to reserve a couple of minutes for rebuttal. You may, but you'll have to help keep track of your own time because that will continue to show the whole time. Absolutely. In this case, we're asking the court to reverse Mr. Tirado's conviction and remand it for a new trial as well as his sentence. The main argument that we make, we make three arguments on appeal, but the main one is that his trial was tainted. It was tainted because of prosecutorial misconduct in this case. It's a case dealing where my client was charged with and ultimately convicted of possessing with intent to distribute methamphetamine. The only witness really at the trial besides the DEA agents who arrested him was his girlfriend, who at one point in time was a possible co-defendant in the case. She decided to turn against him and testified for the government. It was a circumstantial case. The government admitted that not only to the court but to the jury in their closing argument. They had no direct evidence of my client doing anything with the drugs. Before trial, the government then, what they tried to do, what they did was they filed a motion to get certain 404B evidence admitted, prior bad acts, supposedly showing that Mr. Tirado had been previously involved in drugs. That motion was denied. The defendant opposed that motion. There was a hearing held before the district judge, and the district judge... I believe, relating to whether or not the defendant had told his girlfriend that he stored drugs in his car. That is correct. That was the one piece that was allowed at that point. You're absolutely right. That was the one. This was part of it. This was at this point, this was the question of whether the government could put any of this in as part of its case-in-chief. Well... Right?  That's what they were dealing with. Well, the motion was that, but the ruling wasn't that. The ruling was that it was excluded, it was suppressed, except for the one piece of evidence. Except for the government couldn't offer it as part of its case-in-chief. But the colloquy after the government rested was to the effect that it was all centered on whether or not the defendant was going to testify. And your client's attorney, were you the attorney? I was not. The attorney did his utmost to keep the client off the stand. And pointing out in an ex parte hearing with the judge that if his client took the stand, there could be all sorts of problems, including the fact that the evidence which had been excluded might be able to come in either to impeach him or to rebut any statements that he might make. And, therefore, he strongly urged the defendant not to testify. And the judge cautioned him, the defendant, not to, you know, to heed his lawyer's advice. But the client decided to testify. And it seemed to me that once that happened, we had a new ballgame in terms of what could be brought in, because if a client is going to, if a defendant is going to get on the stand and lie, the government has contradictory evidence that's in accordance with his case. It would be remiss on the part of the prosecutor not to put that evidence in or seek to have that evidence admitted. And when he did that, and when this evidence was admitted during the cross of the defendant, there was no objection by the defendant's lawyer. Right? Do I have sort of the gist of it? Sort of. What am I missing? I'll let me explain that to you. What you're missing there is, let me first say that he did not object after the defense attorney did not object once the client took the stand. And on cross-examination, the prosecutor then began to question the defendant about all this previously suppressed 404B evidence. You went through several things. Let me clarify a couple of things. And the fact that he did not object, if I might just interchange here, means that we're really looking at plain error. We are looking at plain error to a degree. And I would say this. He did object and oppose the 404B evidence coming in before trial. That was sustained except for that one little statement about that my client had The district court did say that the government could introduce that evidence, which they did on direct examination through the girlfriend. Other than that, everything else was excluded, including a prior conviction, okay, which he had in 1999 for being an alien in possession of a firearm. Right. The government made no mistake about it. Let's go through it in sequence. In the pretrial proceeding at the hearing, the government asked that that be admitted. The government, the court said no. The prosecutor then said, I would like a point of clarification on that, Your Honor. And he asks him, how about if the defendant takes the stand? And the court says, that's a little different analysis. That's not 404B. That's 609. We'll cross that bridge when we get to it. I'm leaving that part open. They then, in the 404B pretrial hearing, then discuss everything dealing with what the girlfriend is going to supposedly introduce, that he has shown her drugs, that he keeps them in his trailer, that she's gone with him to prior drug deals, that he does all these things with drugs. And the court then says no. None of that's coming in except for the part where he keeps it in his Honda. I will allow that. There is no request on behalf of the government at that point in time for clarification to say, how about if he takes the stand? Can we then get all of these girlfriends' statements admitted? And he says no. That didn't happen. Wait, wait, let me just finish if I may. Because you went through a long series of things. Then we get to the trial. At the trial, the only question then, because the defendant did decide to take the stand, was whether or not the prior conviction, the 1999 prior conviction for being an alien in possession, would be allowed. And that is a 609 hearing. And the court starts that hearing, the district court, by warning the prosecutors and saying, let me warn you that if it's admitted, you will be limited in how you can use that. And he tells them you cannot get into the underlying facts of that conviction because that's really what he wants to get to. Alien in possession doesn't help the prosecutor in this case. It's the fact that when he was allegedly arrested in 1999, he had admitted to an INS agent that a pound of cocaine was his. He had that. Nothing happened with that charge, and it was dismissed. Yeah, but they were discussing impeachment. So then what happens is, is the gut, then the court then tells him, okay, give me your arguments on the 609. He gives them the arguments on the 609, and never does he say, in that 609 hearing, the prosecutor, never does he say, oh, and by the way, Judge, not only is this prior conviction and the underlying facts, even though you just warned me the underlying facts can't come in, but not only is the underlying conviction and the underlying facts, but all the other 404B evidence is admissible, and we'll be able to use that across examination. That never happens, and the court never addresses that issue about all the other 404B evidence. And my client did not lie on the stand. He didn't open the door, as the government claims. He said he did say that he didn't know anything about methamphetamine and didn't know anything about drugs. Is that correct? No. If you read that in context. Let's take a look at that. Okay. Let's do. It's volume two. If you go to page, let's see. What about page 151? Okay. Sir, you know what methamphetamine is, don't you? Answer no. You've never heard of methamphetamine? Well, I've heard of it, but I've never done it or done anything with it. I don't know what it is. You don't know that it's an illegal drug? I don't know. I never use drugs. I don't know what a drug is. You don't know what a drug is? That's right. Now, he's saying, making this statement, and the government has evidence that contradicts that. And his lawyer pointed out, prior to his taking the stand, that he was very worried that if he took the stand, all of this stuff would come in. There wasn't any discussion about that at that time. And sure enough, it did come in. As the lawyer anticipated, as his own lawyer anticipated, it would. I have 50 seconds, but I would like to answer your question and then have some time for rebuttal. Okay. To answer your question is, of course, every lawyer is concerned that when their client takes the stand, they may say something that opens the door. That concern does not mean that that actually happened in this case. And let's go back to page 151, which you just read. If you read that in context, this is a man who only speaks Spanish. It's being done by interpretation. And the question is, do you know what meth is? The answer is, no. You've never heard of meth is the next question. He answers that, yes, I've heard of it. I've never done it or done anything with it. I don't know what it is. So it's pretty clear that what he is getting at when he says, I don't know what it is, is that he's not a user and he's not a seller. He's not saying I don't know. And it's irrelevant that he was previously convicted of a meth offense? He wasn't previously convicted. There is no prior conviction for meth or cocaine or anything else. He admitted to an agent, however, that he did deal in drugs. No, he didn't. The agent says that, and that's why we, the U.S. Supreme Court. That's not saying whether he did or not. That's the evidence that the government had. The government had evidence to the effect that he had admitted to an agent. Which is why. Whether or not it's credible or not, that's another question. Well, but the U.S. Supreme Court in Crawford has said that when you have an agent who claims that something is said, you've got to present that to the jury, and you as the defendant, the accused, have an opportunity to cross-examine that witness to see where they're coming up with it. This is not. No, but the evidence was never offered. It was simply a good-faith basis for the prosecutor to ask the questions. That's all. Okay. I think we should hear from the government. We'll give you a minute on rebuttal. Thanks. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. When the defendant testified that he did not know what methamphetamine is, had never done it or done anything with it, and had never used drugs and did not know what a drug is, he opened the door to the government's evidence rebutting that those statements. Prior to his making those statements, the government had only introduced the piece of evidence that the district court had allowed in the government's case in chief. After he made those statements, the prosecutor properly questioned him and properly called his former girlfriend to rebut those direct statements that he made. This is exactly what his attorney had was worried about when his ---- And there was no objection to that? There was no objection to that. And at the time that it happened, I think, you know, the first ---- as I was reading the transcript for the first time, when he made that statement and all of a sudden the doors opened and all of this testimony and all of this evidence that had previously been excluded is now relevant to rebutting that testimony, one might have thought that the prosecutor would pause and say, Your Honor, sidebar, is this all open now, or that the defense would object and ask the district court to make a ruling. And I think the reason that didn't happen is because everybody was on notice. I mean, this is what everyone had been concerned about. His attorney had said don't, you know, don't testify because you could open some doors. The government had said, of course, if the defendant gets up and says that he doesn't know anything about drugs, that will open the door to all this. So as soon as it happened, I think everybody in the courtroom knew what had just happened and no objections were made. On the Crawford issue, I would say there's two things. The questions that the prosecutor asked, with the exception of one question, the questions that the prosecutor asked was about the defendant's own statements. Did you admit to having a pound of cocaine? Did you say that you went to San Diego to get it? He wasn't being confronted, you know, with an Agents 302 saying, you know, didn't this officer say that? He was being confronted with his own statements. And, of course, the Confrontation Clause guarantees a right to be confronted with witnesses against someone, but a defendant's own statements don't qualify and don't qualify as hearsay. So I just don't think that Crawford comes into play there at all. If the Court has any questions. Roberts. At one point, the prosecutor brought out the fact that or asked the defendant whether or not, because of his testimony about that cocaine, he denying that he ever made those statements, that he was causing the was he saying that that agent was a liar? Yes. That is a little more problematic, it seems to me. It is. It is. I agree that it's a little problematic, not for the reason that the defendant raises on appeal. On appeal, the issue of that question is raised in the context of a long line of cases of this Court that say that it's improper for the government to ask one witness to call another witness a liar. And the defendant cites a bunch of cases about those, and I don't think those are on point, because the rationale for that rule is because the jury is the judge of credibility of witnesses. But that one single question arguably raises this Crawford issue, because arguably with that one question, the defendant is being asked about something that someone else, you know, a hearsay issue that someone outside of court had said. And to that, to that, I would just say that even if that was there, and I actually did some research and I wasn't able to find a case where a defendant was confronted with a statement that he had made to an agent in this sort of way, so I couldn't find anything directly on point. But because of that and because there was no objection, even if arguably that was error, I don't think we could say it was plain error. And then thirdly, even if we say it was plain error, that one question can hardly amount to prejudicial error, because obviously the test under plain error is whether absent that error, the result would have been different. And with all of the testimony, with the girlfriend's rebuttal testimony, which I just don't see as problematic at all, because once the defendant says, I don't know anything about methamphetamine, I've never done anything with it, all of the girlfriend's testimony comes in. That testimony, which was quite damning, you know, creates overwhelming evidence. And to the extent that that one question about the agent's statement just simply can't be prejudicial. But it may have been overkill. It might have been. It might have been overkill. I mean, that might have been. And like I say, I haven't found a case directly on point, so I can't say for sure. But that's the one question that arguably might have been problematic. But the question in this, in our estimation, I guess, is whether absent that, it's the result would have been any different. And I can't imagine that it was, given that the statements had come in, he had been confronted with his statements, then the girlfriend's, all the girlfriend's testimony, you know, and all the evidence of this particular drug deal with the phone calls and the driving up from Carson City and the, you know, all of that. So I just. I don't think he helped himself by testifying. I don't think he did. I think this is a case where a defendant would have been well advised to heed his If the Court doesn't have any other questions, thank you. Thank you. Very briefly, I would just like to point out that when they were going in the pretrial proceedings, when they went before the judge to argue whether this would come in or not, and the district judge was very careful, I mean, went through several hearings, heard argument, read everything. The Court said the following about why he was not going to allow this other evidence to come in. It's on page 12 of volume 1 of the excerpts of record. It says, I want to cover the other items which are raised here skillfully by counsel. It does look, if we allow simply the proof that he was a drug dealer before, that his prior bad acts show he was a drug dealer, that it could cause the jury to decide the case on the wrong basis. That is, he sold drugs before, likely he sold drugs now, which in my estimation is not a proper use of prior bad acts and would be barred by Rule 404B. And he took the stand, and like I said, there was never any – nobody was ever on notice or the government did not stress that if the defendant took the stand, this excluded 404B evidence would be allowed in, and they would then question him on everything on it, because, again, after the Court excludes this, there is no request by the prosecutor for clarification like there was on the prior conviction to say, hey, if he takes the stand, can we bring in this 404B evidence? During the trial – Scalia. Well, it would have taken us for the defense lawyer to object as soon as he asked the first question and ask for a sidebar conference and raise his concerns about it. He wasn't concerned about it because he had anticipated it would happen, the defense lawyer. Isn't that right? That doesn't mean – well, I don't know. I can't speak for defense lawyer. I can just say what happened. And the record does show that he did not object. Well, the record speaks for the defense lawyer on page 99. Okay. When he says that he's going to be subject to cross-examination by a very skilled prosecutor who will attempt to convict my client based on his own testimony, and perhaps even in the course of that cross-examination, open up some of the doors that have now been foreclosed regarding the admission of other acts and evidence in this case, that concerns me. Yeah. Again, the fact that he had this fear doesn't mean that the client actually opened the door. You will interpret whether the door was opened or not. Well, I think that has to – yes. We have to determine that. Absolutely. And the only other thing that I would say is he did convict him on his own testimony, but not on what happened in this case. He convicted him on evidence of what had happened in the past. It would be as if your girlfriend was sitting there with you and you were charged with something. We understand. We understand. She took a stand. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, United States v. Walker.
judges: Schroeder, Smith, Walker